# CIRCUIT COURT OF CHESTERFIELD COUNTY

Chippenham & Johnston-Willis
Hospitals, Inc.

   v.

E. Anne Peterson,
State Health Commissioner, et al.

Case No. CH00-72

Chippenham & Johnston-Willis
Hospitals, Inc.

   v.

E. Anne Peterson,
State Health Commissioner, et al.

Case No. CH00-172

November 13, 2000

BY JUDGE JAMES W. HALEY, JR.

The issue here for resolution is whether one hospital corporation has shown "good cause" to permit it to participate as a party to the application of another hospital corporation for a certificate of public need.

On November 15, 1999, the State Health Commissioner ("Commissioner") determined that Chippenham & Johnston-Willis Hospitals, Inc., ("Chippenham") had not shown "good cause" to participate as a party in the application of Bon Secours-Richmond Health Systems, Inc., et al. ("Bon

Secours") to replace Stuart Circle Hospital in Richmond with a facility in Chesterfield County. Chippenham has appealed that decision pursuant to Va. Code § 32.1-102.9.

Va. Code § 32.1-102.3 requires that entities seeking to establish medical care facilities file an application to obtain a Certificate of Public Necessity ("COPN") from the Commissioner. Va. Code § 32.1-102.6(D) grants any person showing good cause the right to participate in the application review process. Va. Code § 32.1-102.6(G) sets forth several definitions of good cause, but, in the present proceeding, Chippenham has relied only upon the following definition in support of its argument:

> Good cause means . . . (iii) there is a substantial material mistake of fact or law in the Department staff's report on the application or in the report submitted by the health planning agency.

Va. Code § 32.1-102.6(B) requires the health planning agency, here the Central Virginia Health Planning Agency ("CVPHA"), to "submit its recommendations on each application . . . to the Department. . . ." Chippenham petitioned for good cause status. This petition, which designated twenty-one substantial material mistakes of fact or law made by CVPHA or department staff, was heard by Raymond O. Perry, Adjudication Officer, who by letter opinion responded to each of the twenty-one designations and denied the petition. This denial was affirmed by a decision of the Commissioner on November 15, 1999, and the present appeal followed.

In this appeal, Chippenham has narrowed it allegations of mistake of fact or law to four, each of which, it is argued, demonstrate findings not consistent with the State Medical Facilities Plan. ("SMFP") Va. Code § 32.1-102.3 states in part that "Any decision to . . . approve the (COPN) shall be consistent with the most recent applicable provisions of the (SMPH). . . ." The four alleged mistakes are: (1) Occupancy rates projected are 40 to 50% less than those deemed appropriate in the SMPH; (2) Bon Secours will be within six miles of Johnston-Willis and eight miles of Chippenham, not ten miles as set forth in the SMPH; (3) Stuart Circle should be considered for closure as superfluous, rather than replaced, under criteria set forth in SMPH; and (4) the service area designated by Bon Secours was determined by gerrymander and is contrary to the SMPH.

In *Roanoke Memorial Hospitals v. Kenley*, 3 Va. App. 599, 606, 609, 352 S.E.2d 525, 531 (1987), petitioner maintained that if the decision of the Commissioner was inconsistent with the State Health Plan, a COPN should be denied as a matter of law. The court stated:

the use of the word "should" in the context of the State Health Plan was intended to confer an appropriate amount of discretionary authority in the administrative body . . . . We believe that "consistent with" does not mean "exactly alike" or "the same in every detail." It means instead "in harmony with," "compatible with," "holding to the same principles," or "in general agreement with." The circuit court determined (properly) as a matter of law that the State Medical Plan was flexible.

In *State Health Commissioner v. Sentara*, 260 Va. 267, 273, 534 S.E.2d 325, 329 (2000), the court stated that:

Section 32.1-102.3(A) does not . . . require the Commissioner to grant a COPN simply because a COPN application complies with the existing SMFP. The Commissioner correctly points out that compliance with the SMPH is only one factor in the decision . . . the Commissioner found that even though Sentara complied with the existing SMFP, it had not demonstrated a public need for the project. This conclusion was within the discretion and authority of the Commissioner under both Code § 32.1-102.3 and the provisions of the SMPH.

In *Johnston-Willis v. Kenley*, 6 Va. App. 231, 250-51, 255, 369 S.E.2d 1 (1989), the adoption by the Commissioner of "A desirable occupancy standard" as set forth in the then designated State Health Plan "was proper and within his discretion."

Though there dealing with the State Health Plan, a decision by the Commissioner as to whether a COPN application is consistent with that plan is "an issue of law involving an interpretation by the Commissioner which falls within his specialized competence and to which he has been entrusted with wide discretion. It is, accordingly, entitled to special weight in the courts." *Johnston-Willis v. Kenley, supra*, 6 Va. App. at 261, 369 S.E.2d at 8 (1989). See also, *Roanoke Memorial Hospitals v. Kenley*, 3 Va. App. at 610, 352 S.E.2d at 525 (1987); *Virginia Jockey Club v. Racing Commission*, 22 Va. App. 275, 292, 469 S.E.2d 70, 79 (1996); *Board for Asbestos and Lead v. Abateco Services, Inc.*, 33 Va. App. 473, 534 S.E.2d 352 (2000). That same standard is applicable to consistency with the SMFP.

Judicial review of the Commissioner's decision is controlled by those principles set forth in Va. Code § 9-6.14:17 of the Virginia Administrative Process Act and cases decided thereunder. *Hilliards v. Jackson*, 28 Va. App.

475, 479, 506 S.E.2d 547, 549 (1998). The reversal of the Commissioner's decision on an issue of law involving his specialized competence, as here, requires a court to find the Commissioner's decision was arbitrary and capricious. In *Tidewater Psychiatric Inst., Inc. v. Buttery*, 8 Va. App. 380, 386, 382 S.E.2d 288, 291 (1989), the court stated that:

> when an agency is acting within its statutory authority and is applying the basic law delegating that authority in rendering the decision, the issues are legal issues that fall within the specialized competence of the health commissioner, and the court should give deference to the commission's decisions unless they were "arbitrary and capricious."

See *Johnston-Willis v. Kenley*, 6 Va. App. at 261, 369 S.E.2d at 9 (1989). See also, *Virginia ABC Commission v. York St. Inn*, 220 Va. 310, 257 S.E.2d 851 (1979).

An agency decision is arbitrary and capricious when that decision is beyond the scope of its legal authority or is without substantial evidence to support it.

Actions are defined as arbitrary and capricious when they are "willful and unreasonable" and taken "without consideration or in disregard of facts or law or without determining principle." *Black's Law Dictionary* 105 (6th ed. 1990). *School Bd. of the City of Norfolk v. Wescott*, 254 Va. 218, 224, 492 S.E.2d 146, 150 (1997).

Substantial evidence refers to:

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" . . . Under this standard the court may reject the findings of fact of the agency "only if, considering the record as a whole, a reasonably mind would *necessarily* come to a different conclusion."

*Roanoke Memorial Hospitals v. Kenley*, 3 Va. App. 599 at 610, 352 S.E.2d 525 (citations omitted) (italics in original).

The court finds that the Commissioner's interpretation of Va. Code § 32.1-102.3 as giving him discretion in determining the degree to which a COPN application must be, or may not be, consistent with the SMFP is a correct interpretation of that statute. Moreover, it is only one of the statutory factors which must be considered in a decision to grant or deny the application. There was no mistake of law. Accordingly, that interpretation is not arbitrary and capricious.

The four allegations of mistake of fact upon which Chippenham relies in this proceeding were set forth as allegations 1, 2, 3-4, and 5 in the adjudication officer's letter of November 15, 1999, as were his specific responses thereto. Both are incorporated into this opinion as an Appendix. The court has carefully considered those responses and the underlying record relied upon in their formulation. There was substantial evidence to support each of the four determinations made by the adjudication officer and affirmed by the Commissioner. There was no mistake of fact. Accordingly, those determinations were not arbitrary and capricious.

Thus, having determined there was no "substantial mistake of fact or law in the Department staff's report on the application or in the report submitted by the health planning agency. . . ." Va. Code § 32.1-106(G), the court finds Chippenham has failed to establish "good cause" and the decision of the Commissioner in denying such status is affirmed. Va. Code § 9-6.14:19.

*Appendix*

*Allegation # 1:*

The staff report of the Central Virginia Health Planning Agency ("CVHPA") erroneously concluded that the proposed primary and secondary service area of the applicant was, in fact, a reasonably accurate estimate of the service area. That conclusion, however, is wrong. For example, the zip code in which Johnston-Willis Hospital is located is not included in the primary service area of the proposed new hospital even though Johnston-Willis Hospital is less than six miles from the site of the proposed hospital. It is unprecedented that a proposed primary service are would not include a zip code area contiguous to the zip code area in which a proposed project is located as is the case here. Likewise, the zip code in which Chippenham Medical Center is located is not included in either the primary or secondary service area of the proposed new hospital. Basically, the described service area is gerrymandered to omit areas of Chesterfield County, the City of Richmond, and Henrico County and to include substantial portions of the counties to the west and southwest even though those areas historically relate to acute facilities in either Charlottesville or Farmville. Thus, the resultant analyses that rely, in part, on this inaccurately described service area are significantly flawed. In this regard, no proper assessment of the effects of this project on other hospitals are made, the applicant's claims of improved access for the rural population to the southwest and west are overstated, and the derivative financial projections are flawed. The erroneous conclusion about the service

area constitutes a substantial material mistake of fact as contemplated in Va. Code § 32.1-102.6(G)(iii).

*Finding No. 1:*

The CVHPA did not "erroneously conclude that the proposed primary and secondary service area was, in fact, a reasonably accurate estimate of the service area." The exclusion of the zip code area in which Johnston-Willis Hospital is located does not constitute a material mistake of fact or law, but can be considered to be a prudent judgment for planning and analysis of a new facility's primary service area population. Established patient flow information reflects that patients gravitate from the counties to the south and west of Richmond toward the north and east where the hospitals are located. It would be generally inconsistent to expect patient flow to occur in the opposite direction. Therefore, exclusion of the zip code area in which Chippenham Hospital is located (north and east of the proposed location of St. Francis Medical Center) is not inappropriate, nor does it constitute a material mistake of fact or law. CVHPA apparently had no compelling reason not to accept the proposed service area identified by the applicant. The CVHPA analysis recognizes that Chippenham Medical Center and Johnston-Willis Hospital are the two closest providers to the proposed SFMC location.

The evidence in the record demonstrates that the primary and secondary service areas of the Project were defined based on appropriate factors. These factors included traffic patterns, the direction people go to receive care, and proximity to other providers. The Johnston-Willis zip code area was not included in the St. Francis primary service area because Johnston-Willis is located in the southwest corner of such zip code area. The residents of this zip code mostly reside north and east of Johnston-Willis and would be closer to Johnston-Willis and to other providers north of the River than they would be to St. Francis. Columbia has not demonstrated that this aspect of the CVHPA Staff Report was in error. This good cause ground should be rejected.

*Allegation # 2:*

The CVHPA staff report did not consider or discuss the Guiding Principle that "[t]he COPN program will promote the elimination of excess facility and service capacity . . . . The COPN program will not facilitate the survival of medical care facilities and services which have been rendered superfluous by changes in health care delivery and financing." 12 VAC 5-230-30. Had the Guiding Principle been applied, it would have resulted in the recommended

denial of the application because for the last year, Stuart Circle Hospital has seen a dramatic decline in utilization to the point that for the most recent months in 1999 there have been only thirty-one inpatients in the facility. Clearly, Stuart Circle is a superfluous facility, a fact tacitly acknowledged by Mr. John Simpson who told the CVHPA Board that Bon Secours purchased Stuart Circle with the intent of operating it for three or four years and then closing it so that it could build a replacement hospital outside the city. The failure to apply the Guiding Principle constitutes a substantial material mistake of fact and of law as contemplated in Va. Code § 32.1-102.6(G)(iii).

*Finding # 2:*

The CVHPA Staff Report directly addressed this issue and properly considered the "Guiding Principle" referred to in this allegation. Planning District ("PD") 15 has too many inpatient hospital beds according to the bed need methodology contained in the SMFP. The presence of excess inpatient bed capacity in PD 15, however, is not a "change in health care delivery" that renders Stuart Circle superfluous any more or less than it renders any other hospital in PD 15 superfluous. The proposal itself purports to comply with the principle of eliminating excess capacity within PD 15. Downsizing acute care beds and services within the area of overabundant capacity and relocation of beds to an area which may have inadequate capacity makes logical, good health planning sense and is in line with the COPN guiding principle that addresses the need to eliminate excess capacity and not facilitate the continued operation of superfluous facilities while converting excess facility and service capacity to meet identified needs. This alleged mistake of fact or law is not demonstrated. This allegation should be rejected.

*Allegation # 3:*

The CVHPA staff report improperly and erroneously applied the 85% occupancy standard for beds to be replaced that is contained in 12 VAC 5-240-30.B.1. Although the CVHPA staff had occupancy data for the period September 1998 through August 1999 (showing an average daily census for that twelve-month period of only fifty patients), the CVHPA staff relied instead on outdated occupancy data for the period October 1997 through September 1998 when it applied this regulatory standard. Had the CVHPA staff used the more current data, it could not have recommended the replacement of 130 beds; indeed, using the most recent monthly occupancy statistics for Stuart Circle Hospital, only 60 beds could be transferred to a

replacement facility. This erroneous application of an important regulatory standard constitutes a substantial material mistake of fact as contemplated in Va. Code § 32.1-102.6(G)(iii).

*Finding # 3*:

The CVHPA Staff Report did not "improperly and erroneously" apply the 85% occupancy standard for beds to be replaced. The SMFP clearly states that the calculation cited above is to be performed with respect to the "most recent relevant reporting period." The term "relevant reporting period" is defined in the SMFP as the "most recent 12 month period, prior to the beginning of the Certificate of Public Need application's review cycle, for which data is available and acceptable to the Department." 12 VAC 5-240-10. The period proposed by the Petitioners is not prior to the beginning of the review cycle and therefore is contrary to the requirements of the SMFP. The CVHPA apparently used the most recent, fully reported, twelve-month occupancy data at the time it developed its staff report. The CVHPA properly applied the standards for replacement beds and opined that "BSRHS could only justify the relocation of 65 med/surg and 7 intensive care beds. However, the development of a 72-bed hospital would not be feasible and may not meet the demand of the proposed service area in the future." This alleged mistake of fact or law is not demonstrated. This allegation should be rejected.

*Allegation # 5*:

The CVHPA staff report improperly and erroneously disregarded the important regulatory standard that requires any replacement hospital to be located ten miles or more away from existing facilities with underutilized beds. 12 VAC 5-240.50.A.2. CenterPointe, the location of the proposed new hospital, is only six miles from Johnston-Willis Hospital, which had only a 57.7% occupancy of its licensed beds in 1998. This failure constitutes a substantial material mistake of fact and of law as contemplated in Va. Code § 32.1-102.6(G)(iii).

*Finding # 5*:

The CVHPA Staff Report acknowledged the presence of the Johnston-Willis Hospital and the Chippenham Hospital as being within a ten-mile radius of the proposed location of the St. Francis Medical Center. The CVHPA Staff Report also recognized the low utilization of both petitioner

hospitals. The CVHPA Staff Report did not ignore the proper application of the standard, but rather cited cases in which exceptions to the standard have been made. There is no regulatory standard that requires a replacement hospital to be located ten miles or more away from existing facilities with underutilized beds. The SMFP states "No hospital *should* relocate beds. . . ." This is not an inappropriate or erroneous application of the standard. The CVHPA analysis appropriately took the prior decisions of the Commissioner into account. The Petitioners have not demonstrated that the ten-mile standard was disregarded by the CVHPA or that the CVHPA's analysis in this regard was erroneous. This alleged mistake of fact or law is not demonstrated. This allegation should be rejected.