COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, Kelsey and Alston
Argued at Richmond, Virginia


PETERSBURG HOSPITAL COMPANY, LLC, d/b/a
  SOUTHSIDE REGIONAL MEDICAL CENTER

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 0052-11-2                     JUDGE ROSSIE D. ALSTON, JR.
                                                       FEBRUARY 28, 2012

KAREN REMLEY, M.D., M.B.A., F.A.A.P.,
  STATE HEALTH COMMISSIONER, AND
  CHIPPENHAM & JOHNSTON-WILLIS HOSPITALS, INC.


                FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
                          Jane Marum Roush, Judge Designate

                Jeannie A. Adams (Thomas F. Hancock, III; Hancock, Daniel,
                Johnson & Nagle, P.C., on briefs), for appellant.

                Ishneila I.G. Moore, Assistant Attorney General (Kenneth T.
                Cuccinelli, II, Attorney General; David E. Johnson, Deputy
                Attorney General, on brief), for appellee Karen Remley, M.D.,
                M.B.A., F.A.A.P., State Health Commissioner.

                Nathan A. Kottkamp (J. William Boland; Thomas J. Stallings;
                Jeffrey D. McMahan, Jr.; McGuire Woods, LLP, on brief), for
                appellee Chippenham & Johnston-Willis Hospitals, Inc.


        Petersburg Hospital Company, d/b/a Southside Regional Medical Center (Southside

Regional), appeals from a circuit court ruling affirming the decision of Karen Remley, the State

Health Commissioner (the Commissioner).  The Commissioner's decision denied Southside

Regional's application for a Certificate of Public Need (COPN) to establish an open heart

surgery service at its hospital.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On appeal, Southside Regional makes claim to five assignments of error relating to the Commissioner's denial of a COPN for the project: (1) the Commissioner failed to consider the project in relation to the most recent State Medical Facilities Plan (SMFP), as required by Code § 32.1-102.3(A) and (B)(2); (2) the Commissioner erred by failing to identify evidence in the record relating to the twenty-one criteria for determining public need, as required by Code § 32.1-102.3(B); (3) the Commissioner erred in basing her decision on evidence outside the record; (4) the Commissioner's decision is not based on substantial evidence in the record and a reasonable mind would necessarily come to a different conclusion; and (5) the Commissioner erred in basing her decision on findings from a previous COPN decision in 1997.[1]

Finding no error, we affirm for the following reasons.

---

[1] Southside Regional's precise assignments of error on appeal are:

> 1. The Commissioner committed an error of law and failed to comply with her statutory authority when, contrary to [Code] §§ 32.1-102.3(A) and (B)(2) (2008), she failed to consider [the project] in relation to the most recent applicable State Medical Facilities Plan [(SMFP)] and failed to consider the standards of the applicable SMFP as they relate to a determination of public need. . . .
>
> 2. The Commissioner committed an error of law, failed to comply with her statutory authority, and acted arbitrarily and capriciously when she denied [the project] and failed to identify evidence in the record relating to the required 21 criteria for determining need under [Code] § 32.1-102.3(B) (2008), when the Commissioner expressly rejected the findings, analysis, and recommendations of her Adjudication Officer and health planning staff to approve [the project]. . . .
>
> 3. The Commissioner committed procedural error that was not harmless when she failed to provide notice of the factual basis in the record upon which she relied in denying [the project], and her decision rests on evidence not in the record, including but not limited to, the potential effect of [the project] on the accreditation status and volumes of other institutions outside of the statutorily defined planning district. . . .

I. Background[2]

Southside Regional submitted an application for a COPN on July 31, 2008, seeking to establish open heart surgery services at its hospital by adding two additional operating rooms (ORs). Southside Regional's proposed project was to serve patients from multiple planning districts within the Commonwealth.[3] There is no open heart surgery services provider within Southside Regional's planning district, although open heart surgery services are available in nearby planning districts within the health planning region.

In October 2008, the Central Virginia Health Planning Agency (CVHPA) held a public hearing regarding the project. CVHPA issued its recommendation on November 5, 2008, recommending "partial conditional approval" of the project, limited to the opening of one OR for open heart surgery services. CVHPA also made factual findings regarding the likely number of open heart surgeries that Southside Regional would perform if the project were approved and the project's effect on other nearby hospitals. More specifically, CVHPA reviewed Southside

---

4. The Commissioner committed an error of law because her decision is not based on substantial evidence in the record and a reasonable mind would necessarily come to a different conclusion. . . .

5. The Commissioner committed an error of law and failed to comply with her statutory authority when she departed from statutorily required standards and her decision was not based on substantial evidence in the record in that she arbitrarily and capriciously relied upon findings from a prior COPN decision denying [Southside Regional's] 1997 request to establish an open heart surgery program that was decided under different SMFP standards and different facts and circumstances. . . .

[2] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

[3] Virginia is divided into "health planning regions" and smaller "planning districts." See Code § 32.1-102.1; 12 VAC 5-220-10.

Regional's projections that it will perform, per OR, "170 open heart surgeries during the first year, 250 the second, and 400 the third." However, CVHPA found it "highly unlikely" that Southside Regional would perform this number of surgeries "given that there are only about 300 open heart surgeries in [Southside Regional's] ambitious open heart service area."

Subsequent to CVHPA's issuance of its recommendation, the Division of Certificate of Public Need (DCOPN) issued its recommendation pertaining to the project on November 19, 2008. DCOPN noted that Southside Regional operated below capacity in its current ORs and stated that adding two ORs at Southside Regional would not be justified. DCOPN also noted that 90% of the patients Southside Regional proposed to serve through the project received care at either Chippenham & Johnston-Willis Medical Center (CJW) or Virginia Commonwealth University Health System (VCU). DCOPN recommended "conditional and partial approval" of the project, limited to opening one OR.

Subsequently, CJW petitioned for and received good cause party status in the instant case. CJW and Southside Regional presented evidence before the Commissioner's "Adjudication Officer" during two informal fact-finding conferences. Among other evidence, CJW presented the testimony and affidavit of Dr. Vigneshwar Kasirajan, the chair of cardiac surgery at VCU's open heart surgery program. He testified that there had been a significant decline in cardiac surgery volume throughout the Commonwealth as other treatments have become more popular. Thus, Dr. Kasirajan did not believe that there were a sufficient number of patients requiring open heart surgery to support an additional open heart surgery program "in the area." According to Dr. Kasirajan, the VCU cardiothoracic surgery program's accreditation "was withdrawn in 2003 based on low patient volumes." Dr. Kasirajan stated that "adequate volumes of diverse patients" is a requirement for accreditation and that "any decrease in open heart surgery volumes" at VCU would jeopardize its ability to regain accreditation.

- 4 -

Conversely, Southside Regional submitted, among other evidence, data regarding the number of patients traveling from its planning district to other planning districts and North Carolina for open heart surgery services in recent years.

While Southside Regional's application was pending, but before the record for the informal fact-finding conference closed, the SMFP was amended, altering the requirements for drive times, utilization rates, and staffing in considering whether to grant a COPN. The revised SMFP provisions became effective February 15, 2009.[4]

On June 2, 2009, the adjudication officer recommended granting a COPN for one open heart OR. The adjudication officer's decision contained individual consideration of each of the twenty-one factors listed in the applicable version of Code § 32.1-102.3 and the drive times, utilization rates, and staffing criteria under the revised SMFP.

Subsequently, on June 29, 2009, the Commissioner issued her decision denying Southside Regional's request for a COPN. The Commissioner stated in her determination:

> As required by Subsection B of [Code] § 32.1-102.3, I have considered all 21 matters, listed therein, that must be taken into account in making this determination of public need.
> I have reviewed the findings, conclusions and recommended decision of the [adjudication officer] who convened the informal fact-finding conference held to discuss this application and who analyzed the administrative record pertaining to the proposed project.
> . . . Notwithstanding those reasons [cited by the adjudication officer in recommending the project], I have identified countervailing reasons, contained in the record or otherwise arising from evidence in the record, which provide a strong rationale for denying the project. Based on my review of

_____

[4] In 2009, after the record for the informal fact-finding conference closed, the legislature amended Code § 32.1-102.3, which sets forth the factors the Commissioner must consider in determining whether to grant a COPN. Neither party has appealed the Commissioner's application of Code § 32.1-102.3 as it existed before the 2009 amendments or the circuit court's finding that the pre-2009 version of the statute is applicable in the instant case. Therefore, we apply Code § 32.1-102.3 as it was at the time the administrative record closed, and all citations to that section herein are to Code § 32.1-102.3 (2008).

the project, including my review of the required considerations set forth in [Code] § 32.1-102.3, and in exercise of my statutory authority and discretion "[i]n determining whether a public need for a project has been demonstrated," as stated therein, I am rejecting the recommended decision of the adjudication officer and denying the application. I find the project unnecessary to meet a public need.

(Footnotes omitted). The Commissioner also noted in a footnote that "[t]he law applied in review of this project is that which was in effect on the date the administrative record relating to the project closed, i.e., March 4, 2009. The law has since been amended."

The Commissioner then detailed seven reasons for denying the application, including: (1) the project "stands to reduce utilization of, and otherwise harm the academic viability and quality of, the open heart surgery program" at VCU; (2) the demand for open heart surgery programs in Health Planning Region IV has fallen nearly 9% from 2004 to 2006 because of the availability of new medical treatments and is likely to continue to fall; (3) the project "stands to reduce utilization of the open heart surgery programs" at four other hospitals in Health Planning Region IV; (4) any improvement in driving times for residents in Health Planning Region IV as a result of the project are "much less important than the public interest in maintaining and protecting the volume-sensitive quality of existing open heart surgery programs"; (5) Southside Regional has a number of staff vacancies and unused surgical capacity, suggesting that recruiting, training, and retaining proficient staff to support hospital services may be difficult; (6) "[t]he physician group identified as the one slated to provide cardiothoracic surgical expertise and direction to the [project] is located primarily on the campuses of two hospitals in [Planning District] 15, and is not advocating for another open heart surgery program that would be located in the area but in a separate planning district"; and (7) "the scale of the project is greater than necessary to meet any need" shown by Southside Regional and the project would be "likely to

face low volume and a limited prospect of success in reliably generating positive patient outcomes and safety and in gaining sustained operational efficiency."

Following the Commissioner's decision, Southside Regional appealed to the circuit court. The circuit court affirmed the Commissioner's decision. The circuit court concluded that the Commissioner correctly considered the applicable SMFP pursuant to Code § 32.1-102.3(A) and Code § 32.1-102.3(B)(2), and the twenty other factors contained in Code § 32.1-102.3(B). The circuit court also rejected Southside Regional's allegation that the Commissioner had considered evidence outside the record. Moreover, the circuit court found that evidence in the record supported the Commissioner's decision and that the decision was not arbitrary and capricious.

This appeal followed.

## II. Motion to Dismiss

Following Southside Regional's appeal to this Court, appellees moved jointly to dismiss the appeal for failing to allege a circuit court error. We deny appellees' motion to dismiss.

Southside Regional appeals from a final decision of the circuit court. However, it frames its assignments of error to allege errors in the Commissioner's decision. "In an appeal from an administrative agency, a circuit court acts in an appellate posture and is, in essence, the first appellate court to review the agency's determination." Loudoun Hosp. Ctr. v. Stroube, 50 Va. App. 478, 492, 650 S.E.2d 879, 886 (2007). Thus, "it matters not whether *the trial court* committed an error of law" but "only whether *the Commissioner* erred." Id. (emphases added). Asserting error only by the Commissioner is not fatal to this Court's authority to consider an appellant's assignments of error on appeal. See, e.g., Doctors' Hosp. of Williamsburg v. Stroube, 52 Va. App. 599, 603, 665 S.E.2d 862, 863-64 (2008) (expressly addressing appellant's "argu[ment that] *the Commissioner erred* by considering a staff report and other evidence submitted by EVHSA" (emphasis added)); Chippenham & Johnston-Willis Hosps., Inc. v.

- 7 -

Peterson, 36 Va. App. 469, 478, 553 S.E.2d 133, 137 (2001) (addressing appellant's "challenge[ to] *the Commissioner's* denial of [its] request to participate in the proceedings . . ." (emphasis added)). Therefore, we deny appellees' motion to dismiss.

### III. Analysis of Southside Regional's Assignments of Error

### A. Standard of Review

Code § 2.2-4027 governs judicial review of the Commissioner's decision. Loudoun Hosp. Ctr., 50 Va. App. at 490, 650 S.E.2d at 885. Under the Code, this Court's review of issues of fact is "limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did." Code § 2.2-4027; see also Loudoun Hosp. Ctr., 50 Va. App. at 490, 650 S.E.2d at 885 (quoting Avante at Lynchburg, Inc. v. Teefey, 28 Va. App. 156, 160, 502 S.E.2d 708, 710 (1998)). Moreover, the Code requires that this Court "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Code § 2.2-4027.

"The reviewing court may set the agency action aside, even if it is supported by substantial evidence, if the court's review discloses that the agency failed to comply with a substantive statutory directive." Browning-Ferris Indus. of S. Atl. v. Residents Involved, 254 Va. 278, 284, 492 S.E.2d 431, 434 (1997). However, "[w]here the agency has the statutory authorization to make the kind of decision it did and it did so within the statutory limits of its discretion and with the intent of the statute in mind, it has not committed an error of law" by acting outside the scope of its authority. Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988). Moreover, "'[w]here . . . the issue concerns an agency decision based on the proper application of its expert discretion, the reviewing court will not substitute its own independent judgment for that of the agency but rather will reverse the agency decision only if

- 8 -

that decision was arbitrary and capricious.'" Loudoun Hosp. Ctr., 50 Va. App. at 491, 650 S.E.2d at 886 (quoting Holtzman Oil Corp. v. Commonwealth, 32 Va. App. 532, 539, 529 S.E.2d 333, 337 (2000)).

## B. Issue I: Consideration of the SMFP

Southside Regional alleges that the Commissioner erred by failing to consider the most recent applicable SMFP. Code § 32.1-102.3 governs the Commissioner's authority to issue a COPN. Code § 32.1-102.3(A) provides: "No [COPN] may be issued unless the Commissioner has determined that a public need for the project has been demonstrated. . . . Any decision to issue or approve the issuance of a [COPN] shall be consistent with the most recent applicable provision of the [SMFP] . . . ." Code § 32.1-102.3(B) lists twenty-one factors the Commissioner must consider in determining whether a public need for a project has been demonstrated, including "[t]he relationship of the project to the applicable health plans of the Board and the health planning agency," Code § 32.1-102.3(B)(2). Thus, both Code § 32.1-102.3(A) and (B)(2) instruct the Commissioner to consider the SMFP in determining whether to issue the COPN. See Code § 32.1-102.1 (defining the SMFP as "the planning document adopted by the Board of Health").

It is well-settled that the Commissioner is not required to grant a COPN even if all requirements of the SMFP are met. State Health Comm'r v. Sentara Norfolk Gen. Hosp., 260 Va. 267, 273, 534 S.E.2d 325, 329 (2000). "[C]ompliance with the SMFP is only one factor in the decision." Id. The Commissioner must also consider whether "'a public need for the project has been demonstrated.'" Id. (quoting Code § 32.1-102.3(A)). Thus, while a proposed project must meet the SMFP's requirements before a COPN may issue, the Commissioner may decline to grant a COPN even if the proposed project meets the SMFP's requirements if she determines that there is no public need for the project.

- 9 -

Southside Regional argues that the Commissioner's decision indicates that she failed to consider the most recent applicable SMFP because the decision made no reference to the SMFP standards and her reasons for denial relied on outdated SMFP standards regarding drive times, utilization rates, and staffing requirements.

We conclude from the record before us that the Commissioner did indeed consider the most recent applicable SMFP. In particular, the Commissioner stated in her decision that she considered "all 21 matters" listed in Code § 32.1-102.3(B) and "the required considerations set forth in [Code] § 32.1-102.3." As has been previously noted herein, these provisions necessarily include consideration of the "most recent applicable provision of the [SMFP]." See Code § 32.1-102.3(A), (B)(2). While we recognize that a "conclusional recitation" that the factors of Code § 32.1-102.3(B) have been considered is generally insufficient, the Commissioner here stated that she "reviewed the findings, conclusions and recommended decision" of the adjudication officer and that she had "considered and . . . reflected upon the reasons cited therein for his recommendation to approve the project."[5] The adjudication officer's report contained an exhaustive consideration of the most recent applicable SMFP factors. Thus, the record shows the Commissioner considered the most recent applicable SMFP in reaching her decision.

Moreover, the Commissioner's failure to expressly reference the SMFP standards is not fatal to her decision, as Southside Regional alleges. "While [Code § 32.1-102.3(B)] requires the Commission to *consider* all [of the] factors, it does not require specific findings on each." Bio-Medical Applications of Arlington, Inc. v. Kenley, 4 Va. App. 414, 427, 358 S.E.2d 722,

---

[5] Although the Commissioner rejected the adjudication officer's recommendation, it was still appropriate for the Commissioner to consider the findings and conclusions of the adjudication officer while still rejecting his ultimate recommendation.

729 (1987).[6] The Commissioner considered the most recent applicable SMFP in her decision; this consideration, even without thorough discussion of each SMFP standard, was sufficient.

Southside Regional points to the Commissioner's consideration of utilization rates, drive times, staffing, and the project's impact on the health planning region rather than within the planning district in arguing that the Commissioner relied on outdated SMFP standards instead of the most recent applicable SMFP. We disagree. Again, the SMFP is but one factor the Commissioner must consider under Code § 32.1-102.3(B). In the instant case, the Commissioner's findings regarding the likelihood that the project would face low volume, the risk that the project would reduce utilization of open heart surgery programs at other hospitals in the health planning region, the insignificance of improved driving times compared to the need to maintain volume-sensitive quality of existing open heart surgery programs, and the difficulties posed by Southside Regional's staff vacancies were all appropriate considerations under the twenty *other* factors found in Code § 32.1-102.3(B). Therefore, we conclude that the Commissioner did not err in discussing these factors as part of her consideration of whether "a public need for the project has been demonstrated," Code § 32.1-102.3(A), and not as part of her consideration of the most recent applicable SMFP.

---

[6] In this regard, we compare and contrast Code § 32.1-102.3 to Code § 20-107.3(E), which requires consideration of specific factors in determining spousal support, and Code § 20-124.3, which requires consideration of specific factors in determining custody and visitation arrangements. Significantly, this Court has held that neither Code § 20-107.3(E) nor Code § 20-124.3 requires the trial court to "'quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" See Alphin v. Alphin, 15 Va. App. 395, 405, 424 S.E.2d 572, 578 (1992) (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986), superseded on other grounds as stated in Robinson v. Robinson, 50 Va. App. 189, 195, 648 S.E.2d 314, 317 (2007)); Piatt v. Piatt, 27 Va. App. 426, 434, 499 S.E.2d 567, 571 (1998) (quoting Sargent v. Sargent, 20 Va. App. 694, 702, 460 S.E.2d 596, 599 (1995)).

C.  Issue II:  Identification of Evidence in the Record
Relating to Code § 32.1-102.3(B)

Southside Regional next alleges the Commissioner erred by failing to identify evidence in the record relating to the twenty-one criteria for determining need under Code § 32.1-102.3(B).

Code § 2.2-4019(A)(v) requires that a party "be informed, briefly and generally in writing, of the factual . . . basis for an adverse decision."  In this regard, we find the facts and holding of Bio-Medical, 4 Va. App. at 418, 427-28, 358 S.E.2d at 724, 729-30, instructive.  In Bio-Medical, the Commissioner gave four reasons for denying the appellant's application for a COPN for end stage renal disease (ESRD) services.  Id. at 418, 358 S.E.2d at 724.  The Commissioner found that (1) the appellant did not demonstrate that the services were "the best alternative to increasing the facility's capacity"; (2) the proposal was not consistent with the applicable SMFP standards; (3) the proposal was not "the best alternative for establishing additional ESRD capacity within Planning District 8"; and (4) the proposal was not consistent with ESRD need projections once a competing application was approved.  Id.  The appellant appealed, arguing that the Commissioner erred in failing to make the required, specific findings on all of the factors in Code § 32.1-102.3(B).  This Court affirmed, stating:

> [w]hile [Code § 32.1-102.3(B)] requires the Commissioner to *consider* all [of the] factors, it does not require specific findings on each.  Indeed, not all [of the] factors may be relevant to every application for a [COPN].  It is sufficient that the Commissioner's decision "briefly state or recommend the findings, conclusions, reasons, or basis therefor upon the evidence presented by the record and relevant to the basic law under which the agency is operating."  The Commissioner's decision must show that due consideration was given to the evidence bearing upon those factors which were relevant to the application under consideration.

Id. at 427-28, 358 S.E.2d at 729-30 (quoting Code § 9-6.14:12(E), the predecessor statute to Code § 2.2-4020).

We find that the Commissioner did not err in the instant case as her decision adequately discussed the basis therefor, including her findings and conclusions based upon evidence in the record. In her decision, the Commissioner explicitly listed seven specific "reasons for [denying the COPN]." While the Commissioner did not cite specific provisions of Code § 32.1-102.3 in explaining her decisions, each of her seven reasons related to the Code § 32.1-102.3(B) factors. The Commissioner's explanation of her rationale was sufficient to allow a reviewing court to consider whether her decision complied with the law. See SEC v. Chenery Corp., 332 U.S. 194, 196-97 (1947) (justifying the requirement that an agency explain its decision because "[i]f the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable"). Therefore, we hold that the Commissioner adequately explained her rationale based on evidence in the record.

### D. Issue III: Reliance on Evidence Outside the Record

Southside Regional alleges that the Commissioner relied on evidence outside the record in reaching her decision, including the project's potential effects on the accreditation status and volumes of other institutions outside the planning district. We hold that the Commissioner did not rely on evidence outside the record when she concluded that the project would have a negative effect on VCU, including its ability to gain accreditation, and other open heart surgery programs in Health Planning Region IV or when she concluded that the project "would be likely to face low volume."

Evidence in the record amply supports the Commissioner's finding that the project would have a negative effect on VCU's efforts to regain accreditation. Dr. Kasirajan's affidavit and testimony support the Commissioner's findings regarding VCU. Dr. Kasirajan testified that an insufficient number of patients requiring open heart surgery existed to support an additional open

heart surgery program "in the area" and that VCU's training program lost accreditation in 2003 because of low patient volumes.

In addition, statistical evidence in the record supports the finding that the project would have negative effects on other open heart programs in Health Planning Region IV by rerouting patients from those programs to Southside Regional's program. For example, CVHPA found that based on 2006 market share data, "it is possible that CJW and VCU could lose 16.2% and 11.6%, respectively, of their cardiac surgery patients due to the introduction of open heart services at [Southside Regional]. This could negatively impact the operating costs at these facilities and health care costs in the region."

Similarly, evidence in the record supported the Commissioner's finding that the project would likely face low volumes, including CVHPA's finding that "there are only about 300 open heart surgeries in [Southside Regional's] ambitious open heart service area" and that "the number of open heart procedures performed in [Health Planning Region] IV has decreased by 8.9% from 2004 to 2006." Dr. Kasirajan's testimony also supported this finding. Moreover, statistics showed CJW and VCU, the two highest-volume established open heart surgery centers in the health planning region, performed below revised SMFP plan levels in 2006. CJW, which had four open heart surgery ORs, performed 552 open heart procedures in 2006, for an average of 138 procedures per operating room, below even the SMFP's "year 1" requirement of 150 procedures for a new facility, and significantly below the "year 2" requirement of 200 procedures. Similarly, VCU, which had two open heart surgery ORs, performed 353 open heart procedures in 2006, for an average of 176 procedures that year, above the SMFP's "year 1" requirement of 150 procedures but below the "year 2" requirement of 200 procedures.

Because evidence in the record supported the Commissioner's findings, we hold that the Commissioner did not err in reaching these conclusions.

- 14 -

E.  Issue IV:  Substantiality of the Evidence in the Record

Southside Regional alleges that the Commissioner's decision is "not based on substantial evidence in the record and a reasonable mind would necessarily come to a different conclusion."

"Among the issues of law subject to review is 'the substantiality of the evidential support for findings of fact.'" Bio-Medical, 4 Va. App. at 427, 358 S.E.2d at 729 (quoting Code § 9-6.14:17(4), the predecessor statute to Code § 2.2-4027).  "The scope of review is limited to whether there was 'substantial evidence in the agency record' to support the decision." Id. (quoting State Bd. of Health v. Godfrey, 223 Va. 423, 433, 290 S.E.2d 875, 879-80 (1982)).

"In considering whether the record evidence is sufficient to support a factual finding made by an agency, we apply the substantial evidence standard of review." Sentara, 260 Va. at 275, 534 S.E.2d at 330 (citing Va. Real Estate Comm'n v. Bias, 226 Va. 264, 268-69, 308 S.E.2d 123, 125 (1983)).  "Under that standard, substantial evidence is 'such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion.'" Id. (quoting Bias, 226 Va. at 269, 308 S.E.2d at 125 (citations omitted)).  "An agency's factual findings should only be rejected if, 'considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Id. at 275-76, 534 S.E.2d at 330 (quoting Bias, 226 Va. at 269, 308 S.E.2d at 125).  "In addition, the court must review the facts in the light most favorable to sustaining the [Commissioner's] action and 'take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.'" Bio-Medical, 4 Va. App. at 427, 358 S.E.2d at 729 (quoting Code § 9-6.14:17, the predecessor statute to Code § 2.2-4027).

As discussed throughout this opinion, evidence in the record supports the Commissioner's decision that the project would likely face low volumes and have negative effects on other open heart surgery providers in Health Planning Region IV by decreasing the

number of procedures they perform. Even if the Commissioner was faced with conflicting evidence on these issues, a conflict in evidence is not enough to show that "'considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion.'" Sentara, 260 Va. at 275-76, 534 S.E.2d at 330 (quoting Bias, 226 Va. at 269, 308 S.E.2d at 125). Substantial evidence in the record supported the Commissioner's findings and her ultimate conclusion that there is no public need for the project. Thus, we hold the Commissioner did not err.

### F. Issue V: The Commissioner's Reliance on the 1997 COPN denial

Finally, Southside Regional argues that the Commissioner erred by relying on findings from a prior COPN decision denying Southside Regional's request to establish an open heart surgery program in 1997. We find no basis in the record for this allegation. While some of the Commissioner's reasoning in the instant case may be similar to that undertaken in the 1997 denial, it is not identical or "verbatim" as Southside Regional argues. Moreover, the Commissioner's decision in the instant case acknowledges the change in the statutory and regulatory provisions since 1997. Once again, evidence in the current record supports the Commissioner's decision. Therefore, we hold that the Commissioner did not rely on the 1997 COPN denial in the instant case and thus did not err.

### IV. Conclusion

For the above reasons, we find that the Commissioner did not err in any respect argued by Southside Regional. Accordingly, we affirm.

Affirmed.

- 16 -