PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Lemons, and
Agee, JJ., and Russell, R.J.

VOLKSWAGEN OF AMERICA, INC.

v.  Record No. 022402    OPINION BY JUSTICE BARBARA MILANO KEENAN
                                        October 31, 2003

DEMERST B. SMIT, COMMISSIONER
OF THE VIRGINIA DEPARTMENT OF
MOTOR VEHICLES, ET AL.


                    FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the Court of Appeals

erred in affirming a circuit court judgment approving a decision

of the Commissioner of the Department of Motor Vehicles (the

Commissioner) that an automobile distributor violated Code

§ 46.2-1569(7).  We primarily consider whether Code § 46.2-

1569(7) requires the Commissioner to find, before holding that a

distributor has violated the statute, that the distributor

failed to ship to a Virginia dealer a quantity of new vehicles

that meets the statute's requirements.

     We will state the facts relevant to this appeal.

Volkswagen of America, Inc. (Volkswagen), a New Jersey

corporation, is the distributor of Volkswagen motor vehicles in

the United States and Canada and is a subsidiary of the German

automobile manufacturer, Volkswagen AG.  Volkswagen imports a

fixed supply of vehicles from its corporate parent and

distributes these vehicles to about 600 dealers nationwide, including 17 dealers in the Commonwealth.

Miller Auto Sales, Inc., d/b/a Miller Volkswagen (Miller), is a retail dealer of Volkswagen motor vehicles in Winchester, Virginia. Miller is the smallest dealer by volume of Volkswagen sales in its assigned sales district.

In late 1997, Volkswagen adopted a national program for allocating and distributing to its dealers vehicle models often in short supply, such as the Beetle, the Passat, and the Jetta. This allocation program was designed to take shipments of vehicles that Volkswagen imported from its corporate parent and to divide those vehicles among Volkswagen's six national sales regions in proportion to each region's share of Volkswagen's national "planning volume," which reflected anticipated annual unit sales.

Each region's allotment of vehicles was subdivided further among the region's sales districts, with each district receiving a number of vehicles in proportion to its share of the region's annual planning volume. At the district level, an "area executive" was responsible for allocating vehicles to individual dealers based on Volkswagen's national allocation methodology.

Although Volkswagen's vehicle allocation methodology underwent several changes through October 1998, the core of that methodology consistently had been a "mathematical algorithm"

contained in a computer-generated spreadsheet that Volkswagen distributed electronically to its area executives.  Volkswagen's allocation formula was based on several factors, including the reported inventories of all dealers within a district, anticipated unit sales, and actual unit sales for that year. Each area executive had discretion to adjust the results of the formula in response to local market conditions.

The results computed from the mathematical algorithm were further modified by Volkswagen's "Create an Apostle Program" (CAAP).  Under CAAP, Volkswagen used an independent organization to conduct telephone surveys of recent purchasers of Volkswagen vehicles to evaluate customer satisfaction.  From these surveys, a customer satisfaction index was created that measured each individual dealer's performance in sales, service, and customer relations.

Volkswagen then used each dealer's CAAP score to adjust the allocation formula's results for that particular dealer. Volkswagen also imposed a "minimum stocking requirement," which functioned as a "safety valve" authorizing the area executive to override the allocation formula to ensure that each dealer would have in its inventory at least one vehicle of every Volkswagen model.

In February 1998, Miller sent a letter to Volkswagen, with a copy to the Commissioner, alleging, among other things, that

Volkswagen's use of a customer satisfaction index in its allocation of vehicles violated Code § 46.2-1569(7). That statute provides in relevant part:

> Notwithstanding the terms of any franchise agreement, it shall be unlawful for any manufacturer, factory branch, distributor, or distributor branch, or any field representative, officer, agent, or their representatives:
>
> . . . .
>
> 7. To fail to ship monthly to any dealer, if ordered by the dealer, the number of new vehicles of each make, series, and model needed by the dealer to receive a percentage of total new vehicle sales of each make, series, and model equitably related to the total new vehicle production or importation currently being achieved nationally by each make, series, and model covered under the franchise. Upon the written request of any dealer holding its sales or sales and service franchise, the manufacturer or distributor shall disclose to the dealer in writing the basis upon which new motor vehicles are allocated, scheduled, and delivered to the dealers of the same line-make. In the event that allocation is at issue in a request for a hearing, the dealer may demand the Commissioner to direct that the manufacturer or distributor provide to the dealer, within thirty days of such demand, all records of sales and all records of distribution of all motor vehicles to the same line-make dealers who compete with the dealer requesting the hearing.

Id.

In the letter, Miller requested that Volkswagen disclose "in writing the basis upon which new motor vehicles are allocated, scheduled, and delivered to the dealers of the same line-make." In April 1998, Miller's counsel sent the Commissioner another letter requesting a hearing under the statute. The Commissioner referred the case to a hearing

4

officer to conduct the hearing and to make recommended findings and rulings.

Before the hearing, Volkswagen moved to dismiss the proceedings on the grounds that Code § 46.2-1569(7) was unconstitutionally vague and violated the Commerce Clause of the United States Constitution. The hearing officer denied Volkswagen's motion. At the hearing, much of the factual evidence and expert testimony received by the hearing officer focused on Volkswagen's vehicle allocation methodology rather than on the actual number of vehicles that Volkswagen had shipped to Miller.

After the hearing, the hearing officer issued a proposed decision in which he found that Volkswagen's allocation methodology was "flawed in its design and deficient in its operation." The hearing officer recommended that the Commissioner declare that Volkswagen's vehicle allocation methodology was unlawful and in violation of Code § 46.2-1569(7).

The hearing officer found that there were two mathematical calculations in Volkswagen's allocation formula that worked to Miller's detriment. First, the hearing officer observed that the "algorithm truncated fractional allocations in certain circumstances due to peculiarities of the computerized spreadsheet program." Second, he noted that "the algorithm did

5

not accumulate 'fractional vehicles' so that a small volume dealer, like Miller . . . was effectively frozen out on a repeated basis from acquiring vehicles in short supply."

The hearing officer further found that the results of Volkswagen's allocation program were monitored solely on an "ad hoc" basis and that "[o]nly when a dealer, such as Miller, complained, was there any apparent effort to verify whether or not allocations were fair." The hearing officer stated that statistical measurements were not used in such circumstances and that "the notion of fairness would seem to rest strictly on achieving quietude from the dealerships."

The hearing officer also found that the flaws in Volkswagen's allocation formula were exacerbated by Volkswagen's use of the CAAP program to modify the algorithm results, thus making the allocation of new vehicles "hostage to CAAP performance." In explaining this conclusion, the hearing officer stated:

> [O]ne could reasonably conclude from some of the statistical evidence presented, both by fact witnesses and by expert witnesses, that the restriction of allocations itself created a vicious cycle of lower CAAP scores, as customers who were delayed in receiving ordered vehicles, or who could not get vehicles precisely as specified, might well be less satisfied with Miller.

The hearing officer further found that while Volkswagen presented some testimony that its minimum stocking requirement

6

was a "hallowed and longstanding 'unwritten rule' for allocation," it appeared that this requirement was not applied in allocating vehicles to Miller until after Miller had requested a hearing. The hearing officer concluded that the evidence failed to show that the minimum stocking requirement functioned as an adequate "safety valve" to remedy the deficiencies of Volkswagen's allocation formula.

The Commissioner issued a "Hearing Decision" in which he adopted the findings of the hearing officer. The Commissioner determined, in relevant part, that Volkswagen's vehicle allocation methodology was unlawful and in violation of Code § 46.2-1569(7).

Volkswagen appealed from the Commissioner's ruling to the Circuit Court of the City of Richmond. Volkswagen argued that Code § 46.2-1569(7) violated the Commerce Clause of the United States Constitution and was unconstitutionally vague. Volkswagen also asserted that the Commissioner misinterpreted Code § 46.2-1569(7) because that statute merely "regulates the number of vehicles that a motor vehicle manufacturer or distributor must ship to each of its Virginia dealers, not the mechanisms that a manufacturer or distributor must use to calculate or determine that number."

The circuit court affirmed the Commissioner's determination that Volkswagen's vehicle allocation methodology violated Code

§ 46.2-1569(7), and held that the Commissioner did not exceed his authority in reaching this conclusion. The court stated that the purpose of the statute is to "ensure that Virginia dealers get a fair percentage of vehicles" in comparison to national distributions. The court concluded that, therefore, "the administrative body charged with the statute's enforcement would necessarily have to examine the allocation methodology to determine whether a Virginia dealer is getting its fair share." In addition, the circuit court rejected Volkswagen's constitutional arguments.

Volkswagen appealed to the Court of Appeals, which affirmed the circuit court's judgment. Volkswagen of Amer., Inc. v. Quillian, 39 Va. App. 35, 42, 69, 569 S.E.2d 744, 748, 761 (2002). After rejecting Volkswagen's constitutional arguments, the Court of Appeals concluded, in relevant part, that the plain meaning of Code § 46.2-1569(7) "reflects the intention of the legislature to give the [C]ommissioner the flexibility necessary to accurately determine whether a dealer has received its fair share of vehicles from a distributor." Id. at 63, 569 S.E.2d at 758. The Court further held that "in determining whether a distributor is in compliance with Code § 46.2-1569(7), the [C]ommissioner may consider and base his determination on that distributor's vehicle allocation methodology" and that "the [C]ommissioner is not confined to examining only the actual

8

number of vehicles allocated." Id. at 64, 569 S.E.2d at 759. We awarded Volkswagen an appeal pursuant to Code § 17.1-410(B).

Volkswagen argues that the Commissioner exceeded his authority under the plain language of Code § 46.2-1569(7). Volkswagen contends that the Commissioner improperly determined that Volkswagen violated the statute without considering whether Volkswagen failed to comply with the statute's requirement that Miller receive from its distributor new vehicles in a number "equitably related" to national importation figures.

In response, Miller contends that Volkswagen has waived this argument by failing to object to the hearing officer's statement in a pre-hearing telephone conference that "the issue is this case appear[s] to be whether or not the allocation methodology adopted by [Volkswagen] was equitable in accord with the Statute." In addressing the merits of Volkswagen's argument, Miller argues that the statute contemplates regulation of a distributor's vehicle allocation methodology because the only way to determine whether an equitable number of vehicles has been allocated to a dealer is to evaluate the method by which that number was determined. Miller also asserts that the Commissioner's task was compounded by Volkswagen's failure to maintain adequate records concerning the number of vehicles it allocated to Miller before Miller's complaint. We disagree with Miller's arguments.

9

Initially, we find no merit in Miller's contention that Volkswagen's failure to object to the hearing officer's pre-hearing characterization of the controversy results in a waiver of the argument that Volkswagen advances in this appeal. The hearing officer's statement indicated that he would consider whether Volkswagen's allocation methodology complied with the terms of the statute. In view of the statute's requirements, such a determination could not be made without considering national importation figures and their relationship to the number of new vehicles being shipped to Miller. Thus, Volkswagen has not waived the argument that it advances here.

We resolve the substance of Volkswagen's argument by examining the language of Code § 46.2-1569(7). Under basic rules of statutory construction, we determine the General Assembly's intent from the words contained in the statute. Woods v. Mendez, 265 Va. 68, 74, 574 S.E.2d 263, 266 (2003); Vaughn, Inc. v. Beck, 262 Va. 673, 677, 554 S.E.2d 88, 90 (2001); Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001). When the language of a statute is plain and unambiguous, courts are bound by the plain meaning of that language. Woods, 265 Va. at 74-75, 574 S.E.2d at 266; Industrial Dev. Auth. v. Board of Supervisors, 263 Va. 349, 353, 559 S.E.2d 621, 623 (2002); Cummings, 261 Va. at 77, 540 S.E.2d at 496. Thus, when a statute's language is unambiguous, courts

10

cannot give that language a construction that amounts to holding that the General Assembly did not mean what it actually has stated. Mozley v. Prestwould Bd. of Dirs., 264 Va. 549, 554, 570 S.E.2d 817, 820 (2002); Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002); Vaughn, Inc., 262 Va. at 677, 554 S.E.2d at 90.

We conclude that the language of Code § 46.2-1569(7) is plain and unambiguous. This language required the Commissioner to consider the actual monthly shipments that Volkswagen made to Miller in relation to the number of new vehicles imported by Volkswagen on a national level in the particular vehicle categories covered under Miller's franchise agreement. The statute further required that the Commissioner, in conducting this examination, determine whether Miller obtained the number of such vehicles needed to receive a percentage of new vehicle sales "equitably related" to the number of these types of vehicles imported by Volkswagen nationally.

The Commissioner did not undertake this required analysis. Instead of addressing the actual number of vehicles Miller received from Volkswagen in relation to national importation numbers, the Commissioner merely examined the component parts of Volkswagen's vehicle allocation methodology, and adjustments made to that process, to determine whether they were "fair" in their application to small dealers such as Miller. Thus, in

11

basing his determination on Volkswagen's vehicle allocation methodology, the Commissioner wholly failed to consider the national importation numbers for the types of vehicles covered under Miller's franchise agreement.  This omission was followed by the Commissioner's failure to address whether Miller received the number of vehicles needed to receive a percentage of new vehicle sales "equitably related" to the quantity of these types of vehicles imported on a national level.[1]

"An erroneous interpretation of a statute by those charged with its enforcement cannot be permitted to override [the statute's] clear meaning.  Amendments of statutes can only be made by the legislature and not by the courts or administrative officers charged with their enforcement."  Hampton Roads Sanitation Dist. Comm'n v. City of Chesapeake, 218 Va. 696, 702, 240 S.E.2d 819, 823 (1978); see also Hurt v. Caldwell, 222 Va. 91, 97, 279 S.E.2d 138, 142 (1981); City of Richmond v. County of Henrico, 185 Va. 176, 189, 37 S.E.2d 873, 879-80 (1946).

---

[1] We find no merit in Miller's contention that the Commissioner was limited to examining Volkswagen's vehicle allocation methodology because Volkswagen's records were inadequate to undertake an actual shipment analysis and Miller received an artificially high number of vehicles after filing its complaint.  If the information available to the Commissioner was inadequate to make the required statutory determination, he was required to obtain the necessary information, rather than undertake an analysis that did not comport with the terms of the statute.

The Commissioner's erroneous statutory interpretation resulted in Volkswagen improperly being found in violation of the statute absent any analysis of the actual shipments received by Miller in relation to the relevant national importation numbers achieved by Volkswagen.  Thus, because the administrative agency charged with enforcement of the statute failed to undertake the analysis and make the predicate finding required by the statute, the agency's resulting determination must be set aside.  See Browning-Ferris Indus. of S. Atl., Inc. v. Residents Involved in Saving the Env't, Inc., 254 Va. 278, 284-85, 492 S.E.2d 431, 435 (1997).

We also observe that the Court of Appeals, in its analysis of the Commissioner's decision, incorrectly held that the Commissioner may base his determination whether a distributor violated Code § 46.2-1569(7) on the distributor's vehicle allocation methodology.  This holding was incorrect because it improperly focused on the business judgment of Volkswagen, rather than on the actual shipments to Miller, the relevant national importation figures, and whether there was an "equitable" relationship between those numbers as mandated by the statute.  Accordingly, we hold that the Court of Appeals erred in affirming that portion of the circuit court judgment

13

upholding the Commissioner's determination that Volkswagen violated Code § 46.2-1569(7).[2]

Because our conclusion regarding the Commissioner's erroneous application of the statute decides the merits of this appeal, we do not reach the constitutional issues raised by Volkswagen. Our decision in this regard reflects the established principle of constitutional law that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of the case. Klarfeld v. Salsbury, 233 Va. 277, 286, 355 S.E.2d 319, 324 (1987); Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987); see also Tran v. Gwinn, 262 Va. 572, 583, 554 S.E.2d 63, 69 (2001). The fact that the present case will be remanded and that the constitutional issues may arise again does not affect our obligation to adhere strictly to this principle. Klarfeld, 233 Va. at 286, 355 S.E.2d at 324. Therefore, we will vacate that portion of the Court of Appeals' judgment holding that Code § 46.2-1569(7) does not violate the Commerce Clause of the United States Constitution and is not unconstitutionally vague.

For these reasons, we will reverse in part, and vacate in part, the judgment of the Court of Appeals and remand the case

_____

[2] Based on our resolution of the merits of this appeal, we need not consider the various procedural issues raised by

14

to the Court of Appeals for ultimate remand to the Commissioner for further proceedings consistent with the principles expressed in this opinion.

_Reversed in part,_
_vacated in part,_
_and remanded._

---

Volkswagen.