# CIRCUIT COURT OF THE CITY OF RICHMOND

Volkswagen of America, Inc.

v.

Demerst B. Smit
and Miller Auto Sales, Inc.

October 3, 2007

Case No. CH05-1493

BY JUDGE MELVIN R. HUGHES, JR.

On February 9, 1998, a Virginia Volkswagen retail automobile dealer, Miller Auto Sales, Inc. (Miller) filed a complaint with the Virginia Division of Motor Vehicles alleging that Volkswagen's (VW) distribution and shipment of VW automobiles violated Virginia law. After an administrative hearing, the Commissioner of DMV determined that VW's allocation scheme violated the Virginia Motor Vehicle Dealer Franchise Act, Va. Code §§ 46.2-1500 *et seq.* On appeal, this court upheld that finding, as did the Court of Appeals upon an appeal from this court.

On appeal to the Virginia Supreme Court, the Court reversed, ruling that the governing statute regulates the number of vehicles that a dealer must ship to Virginia dealers, not the VW allocating methodology in question. The court remanded the case, ultimately to the Commissioner, with the direction that he make findings based on whether the number of new vehicles VW shipped to Miller were those "needed by the dealer to receive a percentage of

total new vehicle sales . . . equitably related to the total new vehicle production or importation currently being achieved nationally" under Va. Code § 46.2-1569(7). *Volkswagen of Am., Inc. v. Smit*, 266 Va. 444, 448, 587 S.E.2d 526, 529 (2003). The statute provides in pertinent part:

> Notwithstanding the terms of any franchise agreement, it shall be unlawful for any . . . distributor . . . [t]o fail to ship monthly to any dealer, if ordered by the dealer, the number of new vehicles of each make, series, and model needed by the dealer to receive a percentage of total new vehicle sales of each make, series, and model equitably related to the total new vehicle production or importation currently being achieved nationally by each make, series, and model covered under the franchise.

The court reached its conclusion using "basic rules of statutory construction." *Volkswagen* at 452. It determined the statutory language "plain and unambiguous." *Id.* at 452. The court further observed:

> Because our conclusion regarding the Commissioner's erroneous application of the statute decides the merits of this appeal, we do not reach the constitutional issues raised by Volkswagen. Our decision in this regard reflects the established principle of constitutional law that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of the case. *Klarfeld v. Salsbury*, 233 Va. 277, 286, 355 S.E.2d 319, 324 (1987); *Keller v. Denny*, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987); *see also Tran v. Gwinn*, 262 Va. 572, 583, 554 S.E.2d 63, 69 (2001). The fact that the present case will be remanded and that the constitutional issues may arise again does not affect our obligation to adhere strictly to this principle. *Klarfeld*, 233 Va. at 286, 355 S.E.2d at 324. Therefore, we will vacate that portion of the Court of Appeals' judgment holding that Code § 46.2-1569(7) does not violate the Commerce Clause of the Untied States Constitution and is not unconstitutionally vague.

Due to the resolution on the merits, the Court deemed it unnecessary to consider the various procedural issues raised by Volkswagen. Finally, as noted, the court remanded the case to the Commissioner "for further proceedings consistent with the principles expressed in this opinion." *Id.* at 454.

Now, following a second round of proceedings before the Commissioner, who decided that Volkswagen has violated the statute, the case is back before this court on an appeal by Volkswagen. Volkswagen raises a number of procedural, substantive, and constitutional issues in its appeal.

For two days, a hearing officer, appointed by the Commissioner of DMV, conducted a hearing. During the hearing, the parties stipulated that transcripts and exhibits from the first hearing be made a part of the record to avoid duplication of testimony. In addition, at the second hearing, both sides presented the testimony of experts and others and submitted exhibits. Following, the hearing officer recommended that the Commissioner find that VW violated the statute during the period October 1997 through April 1998, a time when Miller received no vehicles though ordered. The Commissioner in turn found, based on the record, that VW violated the statue "during each of the months of October 1997 through and including March 1998 . . . [when it] shipped zero Passats to Miller and when, during January and February 1998, [it] shipped zero Beetles to Miller" though ordered. Upon consideration of the voluminous record and the oral argument and briefs in support of and in opposition to VW's appeal, the court will uphold the finding of the Commissioner that VW is in violation of Va. Code § 46.2-1569(7) for the period indicated.

*Standard of Review*

The case is here under the appeal provisions of the Virginia Administrative Process Act, Va. Code § 2.2-4000 *et seq.* Specifically, Va. Code § 2.2-4027 sets the standard of review applicable to such appeals to the Circuit Court, as here. That section provides:

> The burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court . . . When the decision on review is to be made on the agency record, the duty of the court with respect to issues of fact shall be limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as trier of fact could reasonably find them to be as it did . . . [In its review of fact issues,] the court shall take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted.

Whether an agency decision on an appeal has support in evidence – the matter of substantial evidence – refers to such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Stated differently, this court on review may reject the agency's finding only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion. *Kenley v. Waterway Estates*, 3 Va. App. 50, 348 S.E.2d 31 (1986). The agency's findings of fact if supported by evidence, without fraud, are conclusive on appeal and the reviewing court's jurisdiction is confined to questions of law. Also, applicable here, errors of law in an administrative decision occur when the agency decisionmaker did not act within the scope of his authority or when the decision itself is not supported by the evidence. *Sentara Norfolk Gen. Hosp. v. State Health Comm'r*, 30 Va. App. 267, 516 S.E.2d 690 (1999), *rev'd* 260 Va. 267, 534 S.E.2d 325 (2000). This rule applies to the procedural and constitutional objections VW has raised, as it contends the Commissioner exceeded his authority granted by law. Finally as to statutory interpretation, the Court has said that the construction made by a statutory public official charged with its administration and enforcement is accorded deference when reviewed by the count. *Tazewell County Sch. Bd. v. Brown*, 267 Va. 150, 591 S.E.2d 671 (2004).

## *The Agency Findings*

As mentioned, the Supreme Court charged the Commissioner with making factual findings of the actual monthly shipments to Miller, VW's national importation of vehicles, and whether the vehicles Miller received, in the words of the statute, are "equitably related" to VW's national imports.

There is evidence that, during the period mentioned, Miller did not receive any Passats and Beetles despite Miller's orders for such vehicles, and the Commissioner so found. This is supported by the testimony of Miller's expert witness. The Commissioner rejected Volkswagen's expert testimony that, even without any shipment of vehicles, Miller already had vehicles to which it was entitled. He rejected VW's contention that, despite the uncontested importation numbers and Miller not receiving any of them, the statute requires a finding of the actual number of vehicles the manufacturer must ship to a dealer in order to find what number of vehicles is "equitably related." The court, however, agrees with Miller, under the circumstances of this case, the statute does not require that the Commissioner find an actual allocation quota for Miller. Miller is one of 600 Volkswagen dealers nationwide and one of seventeen in Virginia. During a six-month period from October 1997 to March 1998, Miller received only one of the Volkswagen

Passats imported to the United States. The total number of Passats imported in those months were 2,016 in October 1997, 2,996 in November 1997, 4,385 in December 1997, 1,270 in January of 1998, 3,655 in February 1998, and 3,682 in March of 1998. In February and March of 1998, Miller received zero of the 1,425 and 4,213 Beetles imported by Volkswagen in those months, respectively.

There is also no direction, either in the statute or by the Court on remand, to make a finding as to whether VW is under no obligation to provide Miller Passats because Miller did not have the front-end alignment equipment VW specified. The statute requires vehicles shipped that are equitably related to imports not on the availability of dealer mechanical equipment, as the imposes its mandate "[n]otwithstanding the terms of any franchise agreement. . . ." For the foregoing reasons, there is evidence in the record, on which a finding that with no vehicles shipped, that is, zero vehicles shipped, there is no equitable relationship to the numbers of vehicles that were in fact imported at the time.

## Procedural and Constitutional Issues

VW argues that the Miller letter of February 9, 1998, which served to lodge its complaint that VW is in violation of the statute, is insufficient to raise a legally cognizable claim. That communication raised the issue of VW's then allocation system methodology. However, the Court did not say to conduct another hearing on Miller's letter. Rather, the court required that the new proceeding be conducted, as noted, on "the principles expressed in [its] opinion." *Volkswagen* at 454. This court finds that the Commissioner was faithful to that charge.

VW argues that, since it has abandoned the allocation methodology complained of originally five years ago, the case is now moot. This position fails for two reasons. One, the Commissioner found that the parties continued to want to pursue their positions in light of the remand. Second, the Supreme Court's instructions on the conduct of any new hearing require that it be done on the principles announced in its opinion.

VW contends that Miller's letter complaint is deficient in that it is without any notice of what it has to defend against. It is without notice of what vehicles are at issue, what years or months are involved and which of those would be the subject of the hearing, what number of vehicles Miller contends it should receive, and the factual bases to support that Miller had not received the appropriate number of vehicles. Again, the case is not now actuated on the February 1998 letter but on the Supreme Court's assessment

of the law and the facts to be determined by the Commissioner without reference to VW allocation methodology even though VW has dropped its allocation scheme.

In addition, VW points to a number of procedural deficiencies which it argues the law requires the Commissioner to follow and allows in the administrative process of resolving disputes committed to him. It contends the Commissioner failed to follow these mandates and that, as a result, his decision should be overturned.

First, VW contends that the Commissioner improperly delegated the authority granted to only him to conduct a hearing on Miller's complaint when he appointed a hearing officer to conduct the hearing. Second, it maintains that the Commissioner did not conduct an investigation as required by Va. Code § 46.2-1573(C). Third, no prior informal conference or consultation was held as part of the agency obligation to ascertain the factual basis for its decision for the later hearing. *See* Va. Code § 2.2-4019. The lack of informal conference deprived VW of the opportunity, VW contends, of disclosure of information the agency relied on in making an adverse decision, a right afforded under Va. Code § 2.2-4019(A)(iii). Fourth, VW contends that it did not receive formal and specific notice from the Commissioner as to the bases for the charges it was ultimately called on to defend. See Va. Code §§ 2.2-4019(A) and 2.2-4020(A), (B), and (C). The foregoing amounts to violations of due process and the Virginia Administrative Process Act. While the record does not disclose that the enumerated were afforded, and Miller agrees they were not, the court believes the lack of adherence to these rights does not trigger any due process or administrative process violation.

The above outlines what can be described as preliminary steps in the administrative process with respect to responsibilities committed to a given agency in fulfilling its charge under law. So long as the required hearing is provided, which in this case was provided, no preliminary hearing need to be afforded. The required hearing was held before the final administrative order now before the court became effective. *See Ewing v. Mytinger & Casselberry, Inc.*, 339 U.S. 594, 70 S. Ct. 870, 94 L. Ed. 1088 (1950). VW had the opportunity to be and was heard at that hearing which resulted in the outcome now on review and the failure to follow the preliminary steps is of no legal effect. Moreover, the Supreme Court of Virginia's decision has set the parameters for the further proceedings before the Commissioner. It is not necessary, considering the Court's directives, to start anew, or *de novo*, as VW seems to contend. This also goes to VW's contention that the Commissioner made a delegation to a hearing officer to conduct a hearing and make a recommendation on the record. There is no evidence that the Commissioner

ever relinquished the authority given him under law to ultimately decide the issues under the standards announced by the Supreme Court of Virginia. The court finds there is no merit in any of the due process and administrative aspects of this case VW assigns as erroneous.

Lastly, VW argues that Va. Code § 46.2-1569(7) is unconstitutionally vague and violates the Commerce Clause of the United States Constitution. These issues must be considered against rules that require a presumption of constitutionality and that, in interpreting laws, courts must, to the greatest extent possible, do so in a way that affords constitutionality. *Yamaha Motor Corp. USA v. Quillian*, 264 Va. 656, 665, 571 S.E.2d 122, 126 (2002); *Finn v. Virginia Retirement System*, 259 Va. 144, 153, 524 S.E.2d 125, 130 (2000); *Pulliam v. Coastal Emergency Servs. of Richmond, Inc.*, 257 Va. 1, 9, 509 S.E.2d 307, 311 (1999). Further, as the Supreme Court has indicated in this case, the courts do not rule upon the constitutionality of a statute unless it is clearly necessary to resolve the merits of the case. *Volkswagen* at 454.

"Vagueness challenges to statutes not threatening First Amendment interests are examined in light of the facts of the case at hand; the statute is judged on an as-applied bases." *Maynard v. Cartwright*, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988). As has been noted, the Supreme Court of Virginia in its decision in this case remanded with instructions to the Commissioner that he make factual finding regarding Volkswagen's actual monthly shipments to Miller, Volkswagen's national importation of particular vehicle models, and a determination of whether the shipments to Miller were equitably related to Volkswagen's importation. The requirements of the statute as viewed by the Supreme Court are clear. The task is to determine the numbers and then determine if those numbers are equitably related. Here, the Commissioner has found for the given periods of time there cannot be an equitable relationship in view of the 600 Volkswagen franchises nationwide. Miller's receipt of zero vehicles (save perhaps one Passat) could not be equitably related when hundreds of vehicles vastly exceeding the number of dealers nationwide were available by import at the time. The determination was made on evidence of the shipment and importation data from both sides submitted into evidence. The statute as interpreted has been determined to be "plain and unambiguous"; it gives fair notice and warning to automobile manufacturers of new vehicle allocation requirements for Virginia dealers.

Volkswagen contends that Va. Code § 46.2-1569(7) is a direct regulation of interstate commerce and thereby violates the Commerce Clause of the U.S. Constitution. But nothing about the statute either on its face or as applied favors in-state interests over out-of-state ones. The statute does not tie

242

vehicle allocation here and within the Commonwealth to those in other states. It merely sets a standard governing treatment by manufacturers, as to dealers in Virginia, for fair treatment.

*Conclusion*

For the foregoing reasons, the Court affirms the decision of the Commissioner of the Virginia Department of Motor Vehicles.