COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, McClanahan and Alston
Argued at Alexandria, Virginia


SHERRIE MORGAN

                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 0399-10-4                JUDGE ELIZABETH A. McCLANAHAN
                                                           APRIL 12, 2011
RENEE KIFUS AND DAVID CHOWANIEC


                  FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                                 William D. Hamblen, Judge

                Douglas E. Myers (Steven W. Fitschen; The National Legal
                Foundation, on briefs), for appellant.

                Lucy E. Nichols (Linda J. Ravdin; Morriah H. Horani; Pasternak &
                Fidis, P.C., on brief), for appellee Renee Kifus.

                No brief or argument for appellee David Chowaniec.


        Appellant, Sherrie Morgan, appeals from the judgment of the circuit court dismissing her

petition for paternity and declaratory relief.  She argues the circuit court erred in finding her

action barred by r*es judicata*.  We affirm.

                                        I.  BACKGROUND

         Sherrie Morgan and Renee Kifus asked David Chowaniec to father a child that Morgan and

Kifus planned to raise.  Morgan gave birth to a daughter, P.M.K., in April 2001.  In July 2001, Kifus

filed a petition in the Juvenile and Domestic Relations District Court in the City of Chesapeake (the

JDR court) seeking "sole physical and legal custody" of P.M.K. "in anticipation of adoption."  Both

Morgan and Chowaniec were named in that action.  Records from those proceedings indicate that a

social services report was ordered by the JDR court, a guardian *ad litem* was appointed to represent

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

the interests of P.M.K., and the parties were instructed to provide authority for the JDR court's ability to award custody to a non-relative without terminating Morgan's rights. In March 2002, the JDR court awarded "joint legal custody" to Morgan and Kifus and continued the proceedings for entry of an order. In May 2002, the JDR court entered a "Consent Order" (*nunc pro tunc* March 15, 2002) granting joint custody to Kifus and Morgan. The order was endorsed by Morgan, Kifus, Chowaniec, counsel for Kifus, and the guardian *ad litem*. No appeal was taken from this order.[1]

In June 2009, Morgan filed a petition for determination of paternity and declaratory relief, pursuant to Code § 20-49.2[2] and Code § 8.01-184 (Declaratory Judgment Act) naming Kifus, Chowaniec, and P.M.K. as respondents.[3] In this action, Morgan asks the circuit court to adjudicate that she is "the sole parent of [P.M.K.]" and that neither Chowaniec nor any other person has any "rights or interest, legal or physical, to [P.M.K.]." Morgan contends that the 2002 custody order is void *ab initio* because the JDR court lacked subject matter jurisdiction since the parties were "in substantial agreement as to the care and custody of [P.M.K.]." She also claims the 2002 custody order is void because it arose out of facts and circumstances surrounding a same-sex relationship tantamount to marriage and is therefore in violation of the Virginia Constitution, Article I, § 15-A (Virginia Marriage Amendment) and Code § 20-45.3 (Marriage Affirmation Act). Kifus filed a

---

[1] During the pendency of those proceedings, Kifus and Morgan entered into a "Custody Agreement," dated February 2002, wherein they agreed that Chowaniec's rights would be terminated and Kifus and Morgan would have joint custody of P.M.K. Chowaniec did not sign this agreement, and the agreement was not incorporated into any order of the court.

[2] Code § 20-49.1 *et seq.* governs proceedings instituted to determine parentage of a child.

[3] Prior to filing the current action, Morgan filed a petition to establish parentage and for declaratory relief in the Circuit Court for Prince William County in 2008, which was non-suited "with prejudice" and a "Petition and Motion to Amend Prior Custody Order" in the Juvenile and Domestic Relations District Court for Prince William County in 2008, which was also non-suited "with prejudice." Because we affirm the circuit court's judgment that the current action is barred under the principles of *res judicata* by virtue of the 2002 custody order, we need not address the contention by Kifus that the non-suits taken in the 2008 actions bar the current action.

plea in bar,[4] which was sustained by the circuit court. The circuit court ruled that the 2002 custody order "is a valid Court Order" and "is preclusive under the doctrine of *res judicata* as to [Morgan's] claims asserted in her Petition."

## II. ANALYSIS

### A. Subject Matter Jurisdiction

We disagree with Morgan that the JDR court did not have subject matter jurisdiction to enter the 2002 custody order.[5] The JDR court has subject matter jurisdiction over matters in which the custody of a child "is a subject of controversy or requires determination." Code § 16.1-241(A)(3). The 2002 custody order arose out of a petition filed by Kifus seeking sole custody of P.M.K. "in anticipation of adoption." Named in the petition were Morgan, the biological mother, and Chowaniec, the biological father. A guardian *ad litem* was appointed to represent the interests of P.M.K., and a social services report was ordered. In addition, the parties were instructed to provide the JDR court with legal authority regarding the court's ability to award custody to a non-relative without terminating the mother's rights. That the custody of P.M.K. was the subject of controversy and/or required determination is readily apparent both from the language of the petition filed by Kifus and the records from the proceedings.

Although Morgan argues she and Kifus were "in substantial agreement as to all aspects of the care and custody of P.M.K" when the petition was filed by Kifus, this assertion ignores the fact that the rights of the biological father were also at issue.[6] Furthermore, regardless of

---

[4] Kifus also filed a demurrer that was not ruled upon by the circuit court.

[5] If a court enters an order without subject matter jurisdiction, the order is void and may be "impeached directly or collaterally by all persons, anywhere, at any time, or in any manner." Barnes v. Am. Fertilizer Co., 144 Va. 692, 705, 130 S.E. 902, 906 (1925).

[6] "[T]he right of the parents in raising their children is a fundamental right recognized by the Fourteenth Amendment." Williams v. Williams, 24 Va. App. 778, 783, 485 S.E.2d 651, 654 (1997), modified and affirmed on appeal, 256 Va. 19, 501 S.E.2d 417 (1998). The biological

- 3 -

whether Morgan and Kifus were in agreement when the petition was filed or reached an

agreement during the pendency of the proceedings, their agreement did not strip the JDR court of

its subject matter jurisdiction.  See Hammers v. Hammers, 216 Va. 30, 31, 216 S.E.2d 20, 21

(1975) (a contract between parties cannot prevent a court from exercising its jurisdiction over

matters involving minor children).  And to the extent there was no "live" or "actual controversy"

as Morgan argues, Code § 16.1-241(A)(3) does not restrict the JDR court's jurisdiction only to

matters in which a disagreement exists between parents or other interested parties.  Compare

Code § 8.01-184 (requiring an "actual controversy" for a declaratory judgment).[7]  Indeed that

notion is inconsistent with the purpose of the statutory framework governing child support and

custody matters – to safeguard the interests of the child.  See, e.g., Goodpasture v. Goodpasture,

7 Va. App. 55, 59, 371 S.E.2d 845, 848 (1988) (permitting parties to determine support

obligations by agreement without court approval "would substitute the self-determined

interests of one or both of the parents over the court-determined best interests of the child").[8]

---

father's rights had not been determined nor had any determination of parentage been made under
Code § 20-49.2 or Code § 20-158 (parentage resulting from assisted conception) to the extent his
status as a parent was in question.

[7] The case cited by Morgan to support her argument, In re Charlena Renee Smith, 262
S.W.3d 463 (Tex. App. 2008), does not persuade us otherwise.  In that case, the Texas appellate
court found an order granting a conservatorship void because the litigant had no standing under
the applicable statute.  The court's comments regarding the requirement of an "actual live
controversy" were made to explain that parties could not confer jurisdiction, which by statute did
not exist, by entering into a conservatorship agreement.  Furthermore, the Texas court noted the
absence of any statutory language prohibiting an attack on a conservatorship order in contrast to
orders involving matters such as adoption.  This case, however, deals with a custody matter, in
which jurisdiction was conferred by statute, standing has not been raised as an issue, and
statutory language does exist prohibiting an attack on the order.  See Code § 16.1-241(A)(3);
Code § 20-146.5.

[8] We note that courts are often called upon to enter orders ratifying or approving
agreements involving minors where the parties are in accord from the outset of the proceedings.
For example, a court may incorporate agreements regarding custody of minor children in the
context of divorce proceedings that have been instituted on the grounds that the parties have been
living separate and apart for one year and no disputes exist between the parties when the

B. *Res Judicata*

In the absence of a material change in circumstances, reconsideration of custody is barred by

*res judicata*. Sullivan v. Knick, 38 Va. App. 773, 782, 568 S.E.2d 430, 434 (2002); Hiner v.

Hadeed, 15 Va. App. 575, 580, 425 S.E.2d 811, 814 (1993); see also Albert v. Ramirez, 45

Va. App. 799, 806-09, 613 S.E.2d 865, 868-70 (2005) (where juvenile court entered valid consent

decree awarding joint custody, the decree was binding, and mother seeking a modification bore the

burden of proving a material change in circumstances); Parish v. Spaulding, 26 Va. App. 566, 573,

496 S.E.2d 91, 94 (1998) ("The purpose of the changed circumstances requirement is to avoid the

bar on relitigation that would otherwise be imposed by *res judicata*."), aff'd, 257 Va. 357, 513

S.E.2d 391 (1999).[9]

*Res judicata* "precludes relitigation of a claim or issue once a final determination on the

merits has been reached by a court of competent jurisdiction." Commonwealth ex rel. Gray v.

Johnson, 7 Va. App. 614, 617-18, 376 S.E.2d 787, 788 (1989). [10] As applied to child custody

---

proceedings are filed. See Code §§ 20-91, 20-109.1. The statutes governing adoption proceedings not only envision agreement among the interested parties but also require the consent of the birth parents, unless a specific exception applies. Code § 63.2-1200 *et seq.* And, petitions seeking approval of infant settlements are routinely filed pursuant to Code § 8.01-424 after the parties have compromised a settlement involving a minor.

[9] A court may "revise and alter such decree concerning the care, custody, and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require." Code § 20-108; Wilson v. Wilson, 18 Va. App. 193, 195, 442 S.E.2d 694, 695-96 (1994). In considering whether a change in custody is warranted, the trial court determines: (1) whether there has been a material change of circumstances since the most recent custody award; and (2) whether a change in custody would be in the best interests of the child. Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983).

[10] As Professor Bryson states:

> The practical significance of a judgment is its finality. A
> judgment is worth very little as long as it can be reversed, set
> aside, or even modified. The doctrine of *res judicata* gives
> meaningful finality to judgments by declaring that matters of fact

determinations, this principle has been codified by the Virginia Uniform Child Custody Jurisdiction and Enforcement Act.

> A child custody determination made by a court of this Commonwealth that had jurisdiction under this act binds all persons who have been served in accordance with the laws of this Commonwealth or notified in accordance with § 20-146.7 or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to those persons, the determination is conclusive as to all decided issues of law and fact except to the extent the determination is modified by a court properly having jurisdiction.

Code § 20-146.5. See Albert, 45 Va. App. at 808, 613 S.E.2d at 869 (citing Code § 20-135, predecessor statute to Code § 20-146.5).

Now, rather than seek to modify the 2002 custody order pursuant to Code § 20-108, Morgan seeks to relitigate that decision.[11] When asked at oral argument why she did not file a petition to modify the 2002 custody order,[12] her counsel stated it was because of a "difference in outcome" as "this option seeks to restore Ms. Morgan to the place that she was before the order of 2002." But she is precluded by *res judicata* from seeking a "difference in outcome" or restoration of "the place that she was before the order of 2002." Indeed, the principle of *res judicata* is "founded upon the 'considerations of public policy which favor certainty in the

---

and law once adjudicated between the parties to a lawsuit cannot be judicially reconsidered.

W. Hamilton Bryson, Bryson on Virginia Civil Procedure 478-79 (3d ed. 1997).

[11] Although Morgan's action is styled as a "Petition for Determination of Paternity," it is clear she is not seeking to establish paternity. Rather, she seeks a determination that she is the "sole parent of [P.M.K.]." "Whatever semantical machinations are involved, any common understanding of the term 'parental rights' includes the right to custody." Miller-Jenkins v. Miller-Jenkins, 49 Va. App. 88, 99, 637 S.E.2d 330, 336 (2006) (Court rejecting contention that parentage action is not an action for determination of custody).

[12] As stated before, although Morgan did file a petition to modify the 2002 custody order in 2008, that action was non-suited at her request.

establishment of legal relations, demand an end to litigation, and seek to prevent harassment of parties.'" Neff v. Commonwealth, 39 Va. App. 13, 17-18, 569 S.E.2d 72, 74-75 (2002) (quoting Bates v. Devers, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974)).[13]  Because Morgan does not seek in this action to modify the 2002 custody order, but rather seeks to relitigate the custody decision, her action is barred by *res judicata*.[14]

---

[13] These considerations apply with even more force here where Morgan seeks to nullify a custody order to which she consented and, in doing so, was presumptively acting in P.M.K.'s best interests.  See Denise v. Tencer, 46 Va. App. 372, 392-93, 617 S.E.2d 413, 423-24 (2005).  To the extent she no longer consented to the 2002 custody order, she was entitled to seek a modification pursuant to Code § 20-108.

[14] We reject Morgan's contention that the 2002 custody order is void because it violates the Virginia Marriage Amendment (VMA) or the Marriage Affirmation Act (MAA).  The VMA, which became effective on January 1, 2007, states that the "Commonwealth and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance, or effects of marriage."  Va. Const. art. I, § 15-A.  The MAA, enacted in 2004, states that "[a] civil union, partnership contract or other arrangement between persons of the same sex purporting to bestow the privileges or obligations of marriage is prohibited."  Code § 20-45.3.  Assuming, without deciding, that the VMA and/or MAA would operate retroactively to render a custody order entered by a court with jurisdiction void because they are declarations of existing common law, we are bound by Prashad v. Copeland, 55 Va. App. 247, 685 S.E.2d 199 (2009).  See Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73, 577 S.E.2d 538, 540 (2003) (under the interpanel accord doctrine, a decision of one panel cannot be overruled except by this Court sitting *en banc*).  "'It is a well recognized principle of appellate review that constitutional questions should not be decided if the record permits final disposition of a cause on non-constitutional grounds.'" Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (quoting Keller v. Denny, 232 Va. 512, 516, 352 S.E.2d 327, 329 (1987)).  See also Volkswagen of America v. Smit, 266 Va. 444, 454, 587 S.E.2d 526, 532 (2003) ("[A] court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of a case.").  In Prashad, a panel of this Court held that neither the VMA nor the MAA prohibited the recognition and registration of a North Carolina custody order awarding custodial rights to a male couple since the North Carolina order did not recognize a legal relationship between the couple and since the custodial rights of the non-biological father arose out of his relationship with the child as opposed to his relationship with the biological father and were based on the fact he had a legitimate interest in the child's custody.  Likewise, there is no language in the 2002 custody order recognizing a legal relationship between Morgan and Kifus or indicating the JDR court's decision to award joint custody to Kifus was based on the relationship between Morgan, Kifus, and Chowaniec rather than the relationship between Kifus and P.M.K.  The 2002 custody order was premised on Kifus' status as a "party with a legitimate interest" under  Code § 16.1-241(A) and stated that "Kifus is a fit and proper person to care for the minor child."

For the foregoing reasons, we affirm the judgment of the circuit court.

<u>Affirmed.</u>