UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Chaney and Senior Judge Annunziata

ANGELIA GROSE

MEMORANDUM OPINION*

v.      Record No. 0404-23-3        PER CURIAM
                                    FEBRUARY 13, 2024

FRANKLIN COUNTY DEPARTMENT
  OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
Timothy W. Allen, Judge

(Jonathan G. Scott; Law Office of Jonathan G. Scott, P.C., on brief),
for appellant. Appellant submitting on brief.

(Carolyn H. Furrow; Melissa P. Keen, Guardian ad litem for the
minor children; Carolyn H. Furrow, P.C.; Melissa P. Keen, P.C., on
brief), for appellee.

Angelia Grose (mother) appeals the circuit court's orders terminating her parental rights to

her children, R.R. and D.R. Mother argues that the circuit court's termination of her parental rights

under Code § 16.1-283(C)(2) violated her Fourteenth Amendment constitutional rights to due

process and equal protection. Appellant mother has waived oral argument on appeal to this Court,

and the appellee Franklin County Department of Social Services (the Department) has not indicated

whether it requests or waives oral argument. After examining the briefs and record in this case, the

panel unanimously holds that oral argument is unnecessary under Code § 17.1-403(ii)(a) and Rule

5A:27(a).

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

"On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). Mother and Jeremy Reynolds (father) are the biological parents to the children who are the subject of this appeal.[2]

According to the parties' stipulation presented to the circuit court, on May 3, 2021, a state trooper pulled over a car owned by mother and discovered methamphetamine, needles, other drug paraphernalia, and two car seats in the vehicle.[3] A police officer went to mother's home and found the home to have "a number of animals, trash bags in the home, cluttered conditions." The officer could hear children in the home but did not see them. After observing the condition of the home, the officer contacted the Department.

The Department entered into evidence two foster care service plans for mother's sons, R.R. and D.R., who were five years old and two years old respectively.[4] The plans described how the Department attempted multiple visits to the home to check on R.R. and D.R. before the boys were taken into foster care, but the Department "was unable to make contact with the children." On May

---

[1] The record in this case was sealed. "[T]his appeal requires unsealing certain portions to resolve the issues raised by the parties." *Mintbrook Devs., LLC v. Groundscapes, LLC*, 76 Va. App. 279, 283 n.1 (2022). We unseal only the facts mentioned in this opinion; the rest of the record remains sealed. *Id.*

[2] The juvenile and domestic relations district court terminated father's parental rights, and he appealed the termination to the circuit court too; he did not appeal the circuit court's orders terminating his parental rights to this Court.

[3] During the circuit court hearing, mother stated that she was not inside the car at the time it was stopped, although she admitted that she owned the car. The Department "acknowledge[d] she wasn't driving the car, but she had purchased the car."

[4] We use initials for the minor children in an attempt to better protect their privacy.

21, 2021, mother went to the Department and requested a drug test. Mother tested positive for buprenorphine but was unable to provide a prescription for the drug. The next day, the Department placed the children in a hotel with father "until the home was cleaned up." The plans state, "DSS later removed the children because of suspicion of drug usage and physical aggression towards the children." The emergency removal order was entered on May 25, 2021.

Mother acknowledged at the hearing in the circuit court that she used methamphetamine in June and September 2021. She also acknowledged that she used heroin in June 2021. Mother agreed that she was "struggling with a significant addiction to illegal substances, Methamphetamine included." Mother also tested positive for marijuana and oxycodone in April and September 2022. Mother testified that she had a prescription for the oxycodone. However, mother failed to provide the prescription to the Department.

While the children were in foster care, the Department required mother to participate in substance abuse treatment and to submit to drug screenings. Mother started a substance abuse treatment program through Piedmont Community Services (Piedmont), but she testified that in August 2021 "they [Piedmont] discharged me because I walked out of class." In September 2021, mother was placed in an "intensive outpatient group" through Piedmont. Mother testified that she was discharged from the outpatient program "because I walked out of class and I didn't want to take Suboxone any longer." Within a week, mother was placed in another opioid treatment program through Piedmont where she was expected to receive Suboxone treatment on a weekly basis. Mother testified that she was discharged from this opioid treatment program, and she stated, "I was discharged because I didn't no longer want to take Suboxone." Mother later enrolled in counseling services through another provider, Phoenix LLC, where she "focused on increasing healthy communication skills, recognition of emotions and behaviors and healthy coping mechanisms, and substance use and sobriety maintenance techniques." Mother also testified that, although the

Department had required her to complete a psychological evaluation, she never "underwent any psychological testing."

According to the foster care service plans, the children had been living together in foster care for 20 months. Both children received speech therapy while in foster care. R.R., who was six years old at the time, participated in outpatient therapy "to work on anger management, anxiety, process past trauma, and process his thoughts and emotions about being in foster care." The report states, "[R.R.] has made great progress since being placed in the home." Although R.R. initially "had some issues making friends," he had "adjusted very well" and made friends in school. D.R., who was three years old at the time, required "a tremendous amount of dental work" for "many cavities," including removing his two front teeth because they had a "significant amount of cavity damage that cannot be repaired." The report describes D.R. as "a very happy boy who smiles a lot."

On May 2, 2022, the Franklin County Juvenile and Domestic Relations District Court (the JDR court), approved the foster care goal of adoption. On September 28, 2022, the JDR court terminated mother's parental rights to R.R. and D.R. Mother appealed the JDR court's orders to the circuit court. After hearing the evidence and argument, the circuit court found that "mother had the drug issue back in April and May of 2021, and they [mother and father] have not within a reasonable period of time exceeding twelve months substantially corrected those conditions." The circuit court then found "that it was in the best interest of the children and is in the best interest of the children at this point in time that they were taken" out of the home. The circuit court then entered an order terminating mother's parental rights to R.R. and D.R. under Code § 16.1-283(B) and Code § 16.1-283(C)(2). Mother now appeals to this Court.

## ANALYSIS

"In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." *Castillo v. Loudoun Cnty. Dep't*

- 4 -

*of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce*, 75 Va. App. at 699 (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

Mother argues on appeal that the circuit court's termination of her parental rights under Code § 16.1-283(C)(2) violated her constitutional rights to due process and equal protection under the Fourteenth Amendment. Code § 16.1-283(C)(2) provides that the court may terminate parental rights with regard to a child if the court finds "based upon clear and convincing evidence, that it is in the best interests of the child" and that the parent has been "unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement." Mother argues that the 12-month time period in the statute violates the Due Process Clause of the Fourteenth Amendment because, due to the serious and permanent nature of a termination of parental rights, more time and notice should be given to parents before the termination of their parental rights. Mother also argues that Code § 16.1-283(C)(2) violates the Equal Protection Clause of the Fourteenth Amendment because the 12-month time period does not take the individual circumstances of the parent into account, and is therefore "arbitrary and does not treat all parents equally."

Here, the circuit court terminated mother's parental rights under both Code § 16.1-283(B) and Code § 16.1-283(C)(2). Mother, however, only challenges the circuit court's termination order under Code § 16.1-283(C)(2). This Court has repeatedly held that Code § 16.1-283(B) and Code § 16.1-283(C) are "distinct and grammatically independent provision[s] of the statute," and therefore provide "individual bases upon which a petitioner may seek to terminate residual parental rights." *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 563 (2003). This Court has explained:

> Code § 16.1-283(B) speaks prospectively, as to the ability of the parent or parents to "substantially" remedy, "within a reasonable period of time," the conditions which led to the foster care placement. Conversely, Code § 16.1-283(C)(2) is retrospective in nature, focusing on whether the parent or parents "have been []willing or []able within a reasonable period of time not to exceed twelve months," to "remedy substantially" the conditions which led to the foster care placement.

*Id.* at 562-63 (alterations in original).

Consequently, mother's failure to challenge the circuit court's termination of her parental rights under Code § 16.1-283(B) renders her argument challenging the termination of her parental rights under Code § 16.1-283(C)(2) to be moot. Even if we were to agree with mother's arguments regarding Code § 16.1-283(C)(2), her parental rights would remain terminated as a result of the circuit court's decision, which mother does not challenge, to terminate her parental rights under Code § 16.1-283(B).

Furthermore, as the Supreme Court has stated, "Our decision in this regard reflects the established principle of constitutional law that a court will not rule upon the constitutionality of a statute unless such a determination is absolutely necessary to decide the merits of the case." *Volkswagen of Am., Inc. v. Smit*, 266 Va. 444, 454 (2003). This Court has also held, "[I]n 'situations in which there is one or more alternative holdings on an issue,' the appellant's 'failure to address one of the holdings results in a waiver of any claim of error with respect to the court's

- 6 -

decision on that issue.'" *Johnson v. Commonwealth*, 45 Va. App. 113, 116 (2005) (quoting *United States v. Hatchett*, 245 F.3d 625, 644-45 (7th Cir. 2001)).

Code § 16.1-283(B) provides that a parent's parental rights regarding a child can be terminated if the court finds by clear and convincing evidence that the child suffered neglect or abuse that "presented a serious and substantial threat to his life, health or development" and that "[i]t is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time." "In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care." *Id.* Proof that the parent has "habitually abused . . . drugs to the extent that proper parental ability has been seriously impaired and the parent, without good cause, has not responded to or followed through with recommended and available treatment which could have improved the capacity for adequate parental functioning" constitutes "prima facie evidence" of the conditions in subsection (B)(2). Code § 16.1-283(B)(2)(b).

Mother acknowledged that she was "struggling with a significant addiction to illegal substances, Methamphetamine included" during the more than a year that the children were in foster care. Mother continued to test positive for drugs and failed to show that she had a prescription for their use. While the Department referred mother to several substance abuse treatment programs, mother failed to successfully complete these programs because she either voluntarily walked out of the class herself or she refused to take the required medication that would help her with her addiction. The circuit court ultimately found that mother "had the drug issue back in April and May of 2021" and that she has not corrected those problems. Consequently, we cannot say that the circuit court erred when it terminated mother's parental rights.

CONCLUSION

In short, the circuit court terminated mother's parental rights under both Code § 16.1-283(B) and Code § 16.1-283(C)(2). Mother does not challenge on appeal that the circuit court erred when it terminated her parental rights under Code § 16.1-283(B). Therefore, the question of whether the circuit court erred in terminating mother's parental rights under Code § 16.1-283(C)(2) is moot – and does not need to be decided because mother is not challenging that her parental rights could have been terminated anyway under Code § 16.1-283(B).

For all of the foregoing reasons, we do not disturb the judgment of the circuit court.

*Affirmed*.